Good morning, your honors. Jessica Hunter, counsel for Mike Angel Maldonado. Good morning, your honors. Peter Fisher, an assistant state attorney on behalf of the people. Nice to see both of you. I know you've argued here before, so it's basically 15 minutes per side.  Thank you. If it pleases this court, I would like to focus on issues one and two in the brief. Your honors, Mike Maldonado was deprived of fair trial by the admission of evidence and argument that suggested this offense was gang-motivated, the admission of other crimes evidence, and by the improper bolstering of the only non-recanting eyewitness' testimony with prior consistent statements. Because the admission of this challenged evidence unreasonably interfered with the jury's determination of his guilt, we ask this court for a new trial. Turning to the gang-motivated evidence, your honors, the state turned what was otherwise an identification case into a referendum on gangs when it argued to the jury that Mike was, quote, a hero in the world of the 2-6 gang for shooting Ricardo Hernandez, that a not guilty verdict would, quote, serve the agenda of the 2-6 gang, and referred to this case as a gang case and the shooting as an execution. These arguments were based on a wealth of inadmissible gang-motive evidence that the state elicited throughout trial through multiple witnesses. Were all of those objected to during closing? They were not, your honor. They were not. And the jury did know that gangs were involved because it took place during the court year, isn't that correct? And didn't the judge make several limiting instructions about the use of the gang testimony? Yes. Your honor, I believe is referring to the limited use of the gang common affiliation between two of the state's witnesses and the defendant. To show bias or interest. Precisely. The state conceded before trial that there was not sufficient evidence to prove that the offense was motivated or related to gang activity. So any time, you're saying, any time that they brought that up in another regard, that is reversible error? Absolutely. I mean, all essentially the state was permitted to do under the judge's ruling was to use the affiliation to prove bias or motive. So with respect to the believability of those two non-recanting eyewitnesses' testimony that they were coerced into identifying Mike in pre-trial statements. So to that end, the state was able to admit evidence that they were affiliated with the same gang, what a gang violation would be, in this case, you know, testifying against, that they could fear retaliation, all to explain to the jury why these witnesses might be testifying in trial the way they are in comparison to what they said in the police station. So we're challenging all the evidence that went above and beyond that from multiple witnesses. Once that goes in, though, once the jury hears about gang, and you don't object at the closing, how do we, where's the line you want drawn then? I mean, once the jury hears about it, it's there. And that's, you agree to that, that's fine, right? So now you're saying, well, it's piling on. Can football pile on? This is an argument on a matter of degree. It's piling on. So where do you draw the line on piling on? What's a foul and what's not? Well, a foul is anything meant to suggest that the offense was gang motivated. And that would be all of the testimony that, for instance, the victim lived in two, six gang territory. That does not go up. Was that objected to? No, it was not. None of these errors were objected to. So where do we go with this? We're a reviewing court. Where do we go? How do we say this is reversible error, there's been no objection at trial, and the jury was allowed to hear this for a limited purpose? Write the sentence for us. It says where the line is. Is it the first time the State piles on, second time, you know, what are we going to say? Well, I believe Your Honor is actually addressing sort of two disparate points, and one is that whether the jury would have been able to properly confine the impeachment gang evidence instead of imputing it into gang motive evidence. And we expect jurors to consider evidence for one purpose and not another in trials all the time with proper limiting instructions and admonishments from the court. So I don't think, you know, for instance, in propensity evidence, or proof of a prior crime to impeach a defendant's testimonial veracity, jurors are not allowed to consider it for his propensity to commit crimes, and they're instructed on that. With regard to where we draw the line and the degree, I think, you know, obviously it's a case-by-case determination. But what makes this case a clear violation is that the gang evidence was pervasive and that the State's otherwise competent evidence was scant. There was no – I mean, there's no doubt here that there was a problem with the State going that far, but was there manifest prejudice here? Yes, and for this reason, because we don't believe that the State would have been able to win a conviction without it. As I was saying, there's no motive. So really it's not simply that the gang evidence served to dirty up the defendant and lead the jurors to believe that, you know, he's a bad person who may have had a propensity to commit this crime. But in this particular case, the State had no physical evidence, no forensic evidence, no motive, no testimony or evidence that these two, the defendant and the victim, even knew each other. So as the Illinois – What it did have, though, and, you know, let's be honest and forthright about this, is it had his brother's statement saying he had done it, he saw him do it, and then the two people in the car. Now there's problems with that because they were all under the influence of all sorts of things, and whether they – and their stories conflict. So, I mean, there were problems with that, but that's the jury's determination, not ours. You're absolutely right. They have three purported eyewitnesses' testimonies, two of which recanted. So that's all we have here. No confession, no murder weapon, nothing else. It's the believability of these three witnesses. And the jury was tasked with determining whether these three witnesses were credible enough to support a conviction. And so to that end, that's why we concede that for the purpose of impeaching the recanting witnesses, that was an appropriate use of the gang evidence. But the notion that there was gang activity involved in this crime essentially imputed a motive here that didn't exist. In the Illinois Supreme Court in People v. Smith, they said that the harm that comes from gang evidence is that it provides a missing link between the victim and the defendant. And any evidence showing that the defendant had a motive to kill the deceased  Let me ask you a question. All that might be true, but I'm going to look at it procedurally with you for a second. Because this wasn't objected to, right? So now it sounds as if you want us to write that the trial judge erred and the trial judge should have sua sponte, said, state, stop it. Is that what you want us to write? And if so, that's pretty off the farm, isn't it, in terms of how the cases go? Can you go with me for a second on what you want the law to be on something like this? Sure. You know, with regard to the trial judge's responsibility, yes. We argue that the trial judge has a duty to ensure that the defendant has a fair trial. And at what point would this gang evidence, since it's not objected to, and the jury was going to hear that there was a gang affiliation for a limited purpose, at some point, you know, you're talking about piling on, but we've got to get a clean line here. We've got to tell trial judges this is when the error occurred. So tell us what you propose we write. Ms. Trial Judge, you have a duty in sua sponte to stop the state, and here's when it is. Well, I think the sort of pinnacle point where this became manifest is in closing arguments because the jury was essentially told how to use this otherwise, you know, disparate gang evidence. But this Court does not need to write. Well, you want all the evidence to go in? You know, help me here. I don't understand. Okay. Well, I don't believe that this Court, I guess to answer your question more directly, I don't believe this Court needs to make a decision in which it says that the trial court has a sua sponte duty. This Court and the Illinois Supreme Court, with regard to the inadmissible gang motive evidence, has oftentimes found that it's plain error on either two grounds, one, because it imperils the defendant's substantial right to an unbiased jury in a fair trial, but two, where it cannot be said with any amount of confidence that the jury didn't rely on this evidence in coming to its conclusion. I understand what you're saying. But if you want us to reverse a trial judge and say, trial judge, it was your responsibility to make sure this person had a fair trial. The person didn't have a fair trial because you allowed it to go on. We have to show that trial judge where the error is because every other trial judge of 2016 wants to know where the error is. Since this wasn't objected to, you know, the trial judge is going to say, okay, this is sua sponte duty on my part. If nobody objects, I have to say, state, stop it. When is that? And under what, you know, when is that? If the defendant does not object and there is gang evidence in the record already, at what point do you want us to write, trial judge has to say, this is when it is? Because we want to try to get clean lines. Not just, okay, it's bad. You know, okay, it's bad. That doesn't give anybody direction as to how, you know, to run the next trial. Because there's lots of these out there. Yes, and I understand that concern. I think it's fairly easy to say when the state elicits evidence that isn't intended or allowed under the judge's ruling for the judge to say that. I mean, that's a violation of the judge's pretrial ruling. Okay, so the first time, the first question. Absolutely, and any question thereafter. And that would be reversible. That question at that moment is reversible? You mean the first particular instance? Yes. The first, I believe the first particular instance in this case was evidence that there were two Sixers around the victim's house, and they were busting out hours before. I don't care what the substance of it is. I just want, as a matter of law, you would like us to write that under these circumstances, when the state is violating the court's order, when that question is asked. And there's no objection here. So when that question is asked, you have to say, state, stop it. Pull the sidebar and go, stop it. And if the judge doesn't do that, reversible errors in the record. That's the proposition you want us to write. I believe that that's one of the alternatives, one of the ways in which this court could write the decision. Yes, because the trial judge is essentially the safeguard of the defendant's right to a fair trial. He makes a ruling, a pretrial ruling, where he considers what the state's arguments are, and then the state essentially, you know, sort of performs its bait and switch. I mean the state conceded that there was no gang motive evidence. The judge in this case in particular seemed to be in agreement with the state because when this issue came up in a post-trial motion, the judge said that all of the evidence and the argument were solely in line with his pretrial ruling and were, in fact, for impeachment purposes only. That's an unreasonable exercise of the judge's discretion under what actually transpired in this case. Is this akin to People v. Blue where there was prosecutorial overreaching in closing in which the lawyer went on and invited all sorts of improper comments or made improper comments? Is that what you're categorizing this as? When in closing argument the lawyer said, you know, this is a gang-related murder, the prosecutor said that, you're saying that's overreaching? Is that what you're saying? Absolutely. And another analogy between this case and Blue is that there were a variety of different errors here. You know, for instance, the prosecution elicited evidence that a shotgun, unrelated to the offense, was recovered from the defendant's home at the time he was arrested. It was in the presence of Joe, and Joe was arrested. Well, Joe wasn't arrested according to the states. He wasn't arrested. He was brought into the station for questioning, but they found the shotgun. But that was never really tied up to the defendant, was it? Nor was it tied up to Joe, so. But it was found in their. Their common residence. Their common residence. Yes. But, you know, in Blue, because we did some of those, I think, didn't we? I know I wrote a codefendant in Blue. That was a police officer's bloodied shirt. It was objected to. It was objected to. So, I mean, that's a huge issue here is no objection. And Blue is, you know, we don't have cumulative error in Illinois, from what I understand, although Blue kind of got there in some respects, but never came out and said we've got cumulative error. So it's just helped us here with, you know, we try to write clean lines so that people know what's going on. And I guess what we're all saying is if you have a situation where it's so egregious that you're saying it should be reversed on that basis, shouldn't the court be given some warning of that or made aware of that by defense counsel? Isn't that only fair? Ideally. Ideally. I mean, in my opinion, you know, it's sort of a mess what happened here. You know, I mean, I think before trial the judge was surprised at what the evidence, the limited purpose. He approved it for that purpose. And then I think, in my opinion, it's very clear reading the evidence and the argument that it was used for a different purpose. Enlarge it. Enlarge it. Exactly. Didn't some of it come out in response to some of the questioning of Joe that he was bringing out some of the gang references? And he was not the easiest witness, I think you would agree, for either. I would agree. Yes, I would agree. Offering things that nobody wanted him to offer and some of the things were gang related. Right. And that, Joe, I mean, though he was a hostile witness, that was the state's witness. And there was a prior trial in this case where the same evidence was offered. The state knew what, you know, everyone was on notice as to what was going to happen with these witnesses, how they were going to testify. This was, you know, a second time around. And I think, you know, I understand Your Honor's concern about articulating a clear ruling. I know you're talking about Blue, but Blue, you know, in all due respect to the Supreme Court, we've all read Blue and we're all saying, okay, which one of these is the error? I'm sorry, I interrupted you. Go ahead. I think, but I think to reorient ourselves, the question here is whether Mike received a fair trial. I mean, of course we should be concerned about the judges having appropriate notice. That brings me back to the test, which I think is manifest prejudice here because of the failure to object. And that brings me further back to the question that I have, which is, you know, you've talked to us about a series of Illinois Supreme Court cases which talk about the invidious nature of the gang evidence. And we understand those cases and we're well aware of those. But in those cases, did those cases have the same type of factual context that we have here, where everyone pretty much agrees that the use of the gang evidence during the course of the trial, which preceded the closing argument, was proper in terms of it being used to rebut a certain motive type of situation here, but motive to change testimony and such things as that. But did those cases, you know, handle the same type of factual context that we have here, where then in closing argument the State went beyond the proper use and expanded upon the discussion of the gang evidence in closing argument? I don't think those cases really had that type of factual twist, do they? Not any of those cases. Not Hoya and Smith and the rest of those cases. Those cases were purely about how the evidence was inadmissible from the get-go. Although there are cases, one out of this district that is cited in the case's brief, Barajas, where the court does make a bifurcated ruling. It says, you know, gang evidence is admissible in order to explain the recantations, but to the extent that the officer in that case testified to superfluous narcotics transactions and all these other gang activities and distracted the jury's focus to things that were irrelevant, that that was impermissible and beyond the ruling. So although we don't have the closing argument piece, courts are making the distinction between evidence that is usable for one purpose and not for another. But then the jury gets instructed. Arguments are not evidence. One of the classic instructions. So the jury does get instructed. You know, under your analysis, and I'm trying to figure out how we would all write it, under your analysis then the jury could understand the limiting instruction that this information goes in for a limited purpose and then it was error for the rest to go in. They couldn't understand the instruction that arguments are not evidence. You know, anything that you've said is not evidence. How do we, under your analysis, the arguments were so heinous, they still got instructed not to consider them, to consider them to be evidence. Right. I'm trying to put the disconnect. Either the jury understands limiting instructions or they don't understand limiting instructions. Right. You know, with regard to the admonishment that arguments aren't evidence, I understand you're saying the jury can't be deemed to appreciate one of the instructions and not the other. Right. But those arguments, those are based on evidence that came into trial. And when that evidence came in, there was no instruction whatsoever. I mean, generally speaking, when gang motive, when this sort of gang evidence comes in, instruction 3.14 comes in and says you are to, because the effect of this evidence is so powerful on a jury, the written instruction and the oral instruction tells the jury you are not to consider this as a motive for the defendant to commit this crime, but only as this. And that didn't happen orally or in the written way in this case. And, you know, interestingly, what did happen with regard to the instructions is two oral instructions were given with regard to the proper use of the gang evidence for impeachment, but none when the rest of this evidence was coming out. So in a way, the judge drew a distinction that even aggravated the prejudice, because when the jury was hearing the proper gang evidence for impeachment, it was told how to consider it. It was not told how to consider any of the other evidence that came out. It wasn't told how to consider the fact that all of the witnesses referred to this defendant throughout his trial by his gang name, despite the State's concession that this is not a gang case. The question is really the reasonableness of the jury's ability after being instructed in a, and I've seen, you know, that instruction also includes passion and prejudice should not sway you, their ability to really delineate between what they heard and what they were urged to do and what their duty is when they get back into that deliberation room. And I think, you know, it's oftentimes the case when an error is not objected to and when a judge does not personally intervene that this court reverses because it cares about the defendant's right to a fair trial. And those are cases in which the evidence is closely balanced. And I would emphasize here is aside from these three witnesses, which Your Honors have noted are not the most reliable witnesses one way or the other, that's it. That's what the State has in this case. It has three witnesses. And the gang evidence served to fill a gap in the State's case. What the State actually did have is, and I think probably its most valuable witness, was Jillian Smith. She was the only non-recanting eyewitness. And what the State did with regard to Jillian was to improperly buttress her credibility and her reliability by telling the jury that what she just testified to on direct examination, she told five other officials throughout the investigation. And I think it has an effect on the jury's deliberation of this case because the jury sent out a note requesting to see her prior statement. So I believe that that indicates the jury's concerned about, you know, I think they're probably troubled by Joe Maldonado and Angel Rodriguez. They don't know what to think about either of them. Despite the fact that there is some credible testimony about the coercion, and so they're looking to Jillian to see, to use her perhaps as a foil, a buttress for their testimonies to make sense of it, which is why they asked for her note in closing arguments, excuse me, in deliberations. So Mike's conviction rests on these three witnesses, one of whom was improperly, her credibility was improperly enhanced throughout the case. And I think it's interesting that the state argued in closing arguments. The state essentially testified to her prior consistent statements in closing arguments to the jury. This court can only assume when the state references something in closing arguments its effect on the jury. But when the jury asks for the note, or excuse me, asks for the statement in a jury note, I think you have evidence that confirms that they affect the state's misconduct with regard to her prior consistent statements had on the jury. Anything else? Thank you. Thank you. Thank you. Good morning, and may it please the Court. Your Honors, this case was properly tried. The state before trial made a motion limine basically saying, we're going to introduce evidence of gang membership to explain what we believe the witnesses are going to do. And of course they knew what the witnesses were going to do. They just had another trial. As defense counsel pointed out, they just had this full trial. It was a mistrial, so they knew what the evidence was, which makes their failure to object even more egregious because they knew full well what all the evidence was going to be. It was the same evidence. But that doesn't excuse overreaching. One of the problems that we all have is the state is told, you can bring this in for a limited purpose, and it seems like they're saying, well, watch us eat around the edges here. We'll just keep going a little bit further, a little bit further, and we'll just try to eviscerate the judge's ruling, which the three of us are former trial judges. Nothing makes you more angry than someone trying to eviscerate your ruling and do it in a sneaky way. And that's what counsel is saying in simple language. And it's reprehensible to do that. I would agree if it did happen. I personally don't believe it happened. Tell us how it didn't happen. Tell us why it didn't happen. You've heard what counsel said, you've read the briefs, saying that this is a gang-related murder when there's nothing to indicate that it's gang-related. Well, we never did say it was a gang-related murder. In fact, we did say we don't know what the motive is. It's a gang case. Well, it is a gang case insofar as everything that these witnesses, including Jillian Smith, did before trial and even at trial was related to their connection to this particular gang. It's exactly like the Tolliver case in which every witness recanted, or the Dixon case as well. This happens again and again and again. And you cannot extricate the gang element out of this case. It goes to everything that the witness said. The judge was very clear about that and said you can bring it in to show that these people might have a bias, might have an interest. Right. So there's a difference between saying this is a gang case and the killing was gang-motivated. I don't know why this young man was killed. No one does. We don't know why. But we never argued that he was killed because of the gang. We did argue that these witnesses flipped because of the gang. We did argue that Jillian Smith said things different because she hung out with gang members and lived in this area and she felt safe in this area. And there was a gang connection to all their testimony. That doesn't mean this is a gang-motive case. There is a difference there. The fact that we call it an execution doesn't make it a gang case either. People are executed for various reasons, legally and illegally, and that doesn't make it per se a gang case. We never said it was a gangland slaying. Was there a drive-by by the state's attorney who testified about Joe's statement? Again, there's drive-bys that are gang-related. There are drive-bys that are not gang-related. There are drive-bys that are in revenge for something else or a debt. The man was shot on the street. He was executed. I don't think those are improper words, and I don't think they necessarily connote improper gang activity. Can I ask you a question along the lines of Justice Gallagher? Most of the cases that do this, we say, well, it's harmless. That's a lot of the cases. It's harmless error because there's 15 eyewitnesses. The problem we're having is that it continues. We keep saying the same cases in which there's a ruling, and there's piling on, and there's no need to pile on. Why did this person in the closing argument even say the word gang? Why would you do that and keep pushing that envelope? In an insurance, in a civil case, if you say the word insurance, that's it. The ball game is over. The flag goes down, and we're off the field. And I guess the question we're having is, isn't that perhaps what the opposing counsel is saying? You know, the time has come to move that line back and to say, nope, it's time. When someone does this, throw that flag down and say, that's it, it's a foul, and the game is over. We do it civilly, and we have not done it criminally. And it's always, well, it's reversible error. But, you know, at some level, it's piling on. It's a different football call. I don't know why I'm in football, though. It's a different call. And, you know, at some point, shouldn't the State's Attorney's Office knock it off? You know, just say, clean up the records here. You know, get it done the right way. You can convict people the right way. You read the records, and you say, why did they do this? You don't need this. You've got everything you need. Why are you piling on? So I guess the question is, are we – that's really what Consul is saying. It's time to move it back and say, uh-oh, no more. The minute somebody does it, the flag goes down, and it's a foul, and we start again. Well, I understand what you're saying. First of all, I would say there was no error here, so I don't think we're talking about harmless error or not. But the other thing you have to realize is that the defense bar is well aware of cases like Blue and things like that, and they're trying to shoehorn every time gangs are mentioned into one of these cases, thereby building in this perception that it keeps going on there. You know, Blue was followed up by another case, which was actually the same case. You know, it was actually the co-defendant on the same case. So, you know, so the notion that there was this continuing pattern is kind of a – so, yes, it is a prevalent claim. Now, the fact that the defense counsel throughout the state are using this claim to then bootstrap shouldn't necessarily – I agree, you shouldn't pile on, you shouldn't overreach, you shouldn't introduce irrelevant evidence. I would hope I wouldn't do that when I'm trying cases. I try not to. But the point is, just because they say it doesn't mean it's true. There's something else here, too. You know, we didn't just follow up a turnip truck. What happens is every witness gets up and makes sure to mention that the guy was a two-sixer and he was a gang member. Every witness. I mean, come on. You know, we're not stupid. Why does every witness have to do this? Somebody told that witness, when you get up there and you're asked, how did you know this guy? I knew him by his gang name, Little Lazy. Oh, okay. And how did you know him? Well, I knew him because he and his brother were in the gang, the two-sixers together. I mean, the fact that everybody keeps doing that. Well, you know, I mean, come on. We're not – we're all trial lawyers. I know. We know what people are doing. I understand that. But on the other hand, Jillian Smith only knew him by his gang name, as Little Lazy, and that's how she knew him. This – you know, Joe Maldonado obviously knew him from being his brother, which is another source of motive and bias. But – and he also knew him through the gang. And it's very clear what – you know, it's actually laughable what Angel Rodriguez and Joe Maldonado did when they got on the stand. The extent to which they disavowed their former statements was – it was palpably ridiculous. I mean, just look at what Joe Maldonado said, why he made the statement that – he signed the statement. He was cold, tired, hungry, thirsty, had to use the bathroom, was yelled at, sworn at, terrified the detectives. He didn't know what time it was. He couldn't sleep. He had to stand up for days. His girlfriend had just passed away. He trusted Detective Garcia was working on that case. The police were making fun of him because of that case. The other witness couldn't remember whether he went to high school or not on direct examination. I mean, these people were there specifically to pervert this case, just as they did in Tolliver, just as they did in Dixon. This is a common problem. This is why we have the 1-15-10 rule. This is a playbook. Now, the fact that we talked about the gang playbook, this is what they do. We know that they do that. They do this in reported cases. Your Honors know that. I know that. Defense counsel knows that. And the way to combat it is a specific Illinois law designed specifically for this instance. So it is part of a gang playbook. Whether or not the killing itself was, we will never know. But what these witnesses did in court was intimately tied to their status as gang members. And there was no way to sanitize that out of the trial.  And I would assert that the things said in closing argument were proper comments on the evidence. This was related to the motive to testify falsely. The other thing you've got to remember in this case is not only did they not object at trial, and again, they'd already seen this show before. So they knew what was going to happen. They didn't object at trial. They didn't object in their post-trial motion. And, in fact, the defendant hired another lawyer. And that other lawyer came in and specifically had transcripts and a list of everything, an exhaustive list of everything that had gone wrong in the trial. And this wasn't among them. So even if you could argue ineffective assistance counsel, that would be waived, too. Well, I mean, that's a problem that I have. I think that this case differs perhaps significantly from the usual gang case that we see. Because here we have a situation where, you know, everyone is agreeing that, yes, this gang evidence is, in fact, relevant and should be admitted for a certain purpose. And then things get murky once we get to the closing argument. Now how do we deal with it? And I don't really think that we've seen a case addressing, you know, this particular factual scenario. What you're saying is that you don't think it's error? No, I don't. Well, first of all, they would have had to point out which specific statements were error. And the statements that have been pointed out, that it's an execution, that's not error. The fact that this is a gang playbook, that's not error. I mean, what is the error here, first of all? And give us a chance, first of all, in the trial court to explain why it's not error, which is where it's supposed to be done so we don't even have to get here. And then tell us what's wrong, you know, here on appeal. Yeah, but I'm saying that the fact that we talked about the witness as the defendant as little lazy, that's not error. That's how Jillian Smith knew him. That was his name. I mean, she didn't know his name. You know, she recognized the weird haircut that he had, but she didn't know his name. So that can't be error either. So you look at each of these things, you know, you can throw these things out, but when you put them in context, they weren't error. Moving to the second issue, the prior consistent statements, and again this is another one that is waved up and down the avenue. It isn't in the post-trial motion. There was no objection at trial, and it wasn't even mentioned by the substitute counsel, so we would argue that even if you were to get to the ineffective assistance, that that wouldn't apply either. But these so-called prior consistent statements are not the run-of-the-mill thing that's happening so often where we have a witness, and the witness is on the stand, and she gives her testimony like Jillian Smith did here, and then we say, isn't it true that you told the police, and then you read her court-reported statement or her handwritten statement or you go through her entire grand jury testimony with her. That didn't happen here. What happened was defense counsel in an opening statement got up and basically said, Jillian Smith didn't tell the police the truth on the first day. She didn't tell the police the truth on the second day. She didn't tell the police the truth the next week, and then moved on. So the clear implication is that what you're going to hear today from Jillian Smith or tomorrow, whenever she testifies, is going to be a recent fabrication. She didn't say it before, it's something new. Look out. So that was pretty clear. When she gets on the stand, the state attorney goes through her testimony with her. She gives her account, her eyewitness account of the events of this case, and then he asks her, well, did you tell this to the police? No. Did you tell the police next day? No. Did you tell the police next week? No. Did you eventually go and talk to the police? Yes. Did you talk to the state attorney? Yes. Did you talk to the grand jury? Yes. But we don't get into the facts, the actual substance of the prior consistent statement. And I've cited cases here in the brief where courts have talked about the fact, you know, it's different where a witness is saying, and she doesn't even say, I said the same things before. She just says, I talked to the police. So it's not even an implied prior consistent statement. So the whole rationale, the rubric of prior consistent statements, doesn't really apply in this context. And, of course, as with the other things in the case, it is waived. Well, and there is the exception, as you point out, for rebutting charges. Right. So even if you were to construe what she said, the simple, did you talk to the police? Yes. Or did you talk to the grand jury? Yes. If you were to construe that as a prior consistent statement, our argument is and was in the brief that that would have been proper given the claim of recent fabrication that clearly happened not only in the opening statement by the defense counsel, but also during questioning and cross-examination. So for the reasons I've stated today and in the brief, we'd ask that Your Honors affirm this conviction and sentence. Thank you, counsel. Thank you. Your Honors, if I may, I'd like to make a few points with regard to the gang evidence issue and the prior consistent statement issue. But with regard to the gang evidence issue, opposing counsel insists that there's not even error here, that the State never said this was a gang-motivated case. I submit that we didn't hear any explanation about why Mike would have been a hero in the world of the 2-6 gang for shooting this victim. That statement does not make any sense. It does not go to explain why Joe and Angel's testimony with regard to their coercion is unbelievable. Essentially, if in closing arguments the State, when addressing Joe and Angel's testimony, say, yeah, they came in here and they said they were coerced, and that's why they gave those statements. But listen, they're part of the same gang as the defendants, so what do you think they're going to say? In fact, they probably could come into some harm's way if they say anything differently. That would have been proper. There's no reason why Mike would be a hero in the gang if this victim was shot, unless the gang had an interest in this victim's death. That absolutely and directly implied that this is a gang motive here. With regard to preservation, substitute counsel, this Court has held actually in People v. Mason back in 1995 that a contemporaneous objection isn't necessary when the issue with regard to the evidence is brought up before trial and then again in the post-trial motion. And in the post-trial motion in this case, substitute counsel did object to the admission of all evidence of gang involvement during the hearing on the motion, just to clarify in case this appellate court had some question about it. When the counsel addressed that objection to the court, the court said, we think this all came in for impeachment purposes. So the court here did have an opportunity to assess whether or not this evidence was in violation of his ruling or not, and didn't. I think it's also significant that when the judge is making the pretrial ruling, sort of perversely the judge says, I'll let it in for this limited purpose because quite frankly I don't think anyone's going to be taken by surprise. There may be gang activity here. There's no other allegation as to why this happened, so that the jury would substitute a gang motive in. I believe that that observation on the judge's part with regard to the likelihood that the jury would, without any competent evidence, assume a gang motive where there was no evidence of it, should have made him more vigilant about protecting the defendant's right and the use, the limited use of this gang evidence. With regard to the prior consistent statements, counsel argues that, well, first that essentially that these statements were allowed to come in, and secondly that they weren't actually prior consistent statements because the facts were never adduced. The recency of the recent fabrication exception is important here because the allegation is that the witness's trial testimony is recently fabricated. In this case, Jillian implicated Mike in the offense on July 11, 2004, years before she got to trial. So telling the jury that after she implicated Mike, she continued to implicate Mike over and over and over again, does not address or rehabilitate an allegation of fabrication. So the exception doesn't apply here. And with regard to the opposing counsel's comment about how there's not even an implied prior consistent statement because there's no substance of the statement, generally speaking, yes. The witness either testifies to the contents of the statement or makes some representation of the statements are in fact the same, with sort of a general remark. In this case, it's actually even worse than that because although Jillian said that she testified to the events and circumstances with these five authorities after having initially implicated Mike, the state in closing arguments provides the content of those purported statements. The state argues Jillian tells them, Detective Garcia, A.S.A. Porcelli, A.S.A. Robertson, she tells them where she was parked. She tells them the streetlights were on. No evidence of this, by the way. She tells them that she gets a look at the boy, that he scrambles, that he has a distinct physical appearance. So this is actually even worse than if Jillian was able to testify to the contents of the statements during her direct testimony because one, the state's making an argument that isn't even based on evidence, and two, there may have been discrepancies between those prior statements and Jillian's trial testimony that the state didn't want to deuce and was able to circumvent by getting her to testify that she made these statements, which naturally implies to the jury that they're consistent with her testimony. But that in closing argument closes the loop by testifying to what the content of those prior consistent statements were, excuse me, was. This Court, actually the Fourth District in People v. Wheeler said, when the state argues in closing that what the witness told the police was consistent with her trial testimony, as would happen in this case, it's disingenuous to say that there's no consistency established for the purposes of the improper admission of prior consistent statements. Your Honors, Mike Maldonado deserves a fair trial in which the state does not overreach. The state was given an inch in this case, and they took a mile by the admission of this irrelevant gang evidence, the improper bolstering of its only seemingly credible witness, and the other crime's evidence, which suggested that he was predisposed to commit the crime. The State of Illinois, before it resolves to put Mike Maldonado away for the rest of his life, should grant him that one fair opportunity. Thank you, Your Honors. Thank you, Counsel. The case was well argued. The briefs were well written. We will take...